ANCHOR LINE (HENDERSON BROS.), Limited, v. ALDRIDGE, Collector of Customs.

(District Court, S. D. New York. October 21, 1921.)

1. Intoxicating liquors �824;138—National Prohibition Act prohibits transshipment from one foreign vessel to another in United States port.

Even if the words "transport" and "transportation," as used in National Prohibition Act, are not given their literal meaning, but are to be construed in the light of legislative intent, the prohibition in that act of the transportation of intoxicating liquors, except as permitted therein prohibits the transportation in a port of the United States from one foreign vessel to another of intoxicating liquors brought in from a foreign country and consigned to another country.

�824;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Customs duties ⊂⟹49½, New, vol. 6A Key-No. Series—Statute permitting transportation of liquors across country in bond was repealed by National Prohibition Act and Eighteenth Amendment.

    Rev. St. § 3005 (Comp. St. § 5690), permitting transportation across the United States in bond of merchandise arriving from outside the United States and destined for a foreign country, was repealed, in so far as it permitted the transportation of intoxicating liquors intended for beverage purposes, by Const. Amend. 18, and National Prohibition Act, tit. 2, § 3, prohibiting the transportation of intoxicating liquors for beverage purposes, and title 2, § 35, repealing laws inconsistent with the provisions of that act.

3. Statutes ⊂⟹159—Later statute repeals plainly inconsistent prior statute.

    Repeals by implication are not favored, but where a later statute is plainly inconsistent with a prior statute, the later one necessarily repeals the prior one.

4. Treaties ⊂⟹8—Presidents' holding that clause of treaty was abrogated will be upheld by courts of the first instance.

    A court of the first instance will not take a position contrary to the holding by Presidents Cleveland and Harrison that article 29 of the treaty with Great Britain of July 4, 1871, had been abrogated.

In Equity. Suit by the Anchor Line (Henderson Bros.), Limited, against George W. Aldridge, Collector of Customs for the Port of New York, to enjoin defendant from interfering with a transshipment in the port of New York from one foreign vessel to another of five cases of whisky. Motion for relief denied, and bill dismissed.

Lord, Day & Lord, of New York City (Lucius H. Beers and Franklin B. Lord, both of New York City, of counsel), for the motion.

William Hayward, U. S. Atty., and John Holley Clark, Jr., Asst. U. S. Atty., both of New York City, opposed.

MAYER, Circuit Judge. This is a motion by plaintiff on the bill of complaint and answer for a decree according the relief demanded in the complaint. The essential facts set forth in the bill and answer are not disputed, and may be briefly stated as follows:

Plaintiff, a British corporation, contracted with Gilmour, Thompson & Co., of Glasgow, Scotland, to transport five cases of whisky from Glasgow to Hamilton, Bermuda, there to be delivered to Burrows & Co., agents of Gilmour, Thompson & Co. These cases were shipped on plaintiff's steamship Cameronia, which sailed from Glasgow July 17, 1921, and arrived at the port of New York on July 27.

These cases were to be transhipped in the port of New York from the Cameronia to a vessel of another British corporation, the Quebec Line, running from New York to Bermuda. Both the plaintiff's vessels and the vessels of the Quebec Line are British steamships, of British registry, and flying the British flag, and Bermuda is a British possession. The cases are covered by a through bill of lading from Glasgow to Burrows & Co., in Bermuda. A bill of lading also accompanies the shipment to New York, calling for the delivery of the cases at the port of New York to the Quebec Line.

The defendant threatened to seize these cases under instructions received from the Treasury Department, dated July 8, 1921, which ad-

vised him to refuse transportation and exportation entries for all intoxicating liquors not covered by a prohibition permit. A prohibition permit is issued for liquor to be used for other than beverage purposes. These instructions stated that this direction was given pursuant to an opinion of the Attorney General. The opinion thus referred to is one issued under date of February 4, 1921, and affirmed after a rehearing on June 30, 1921.

That opinion in effect advised that section 3005 of the Revised Statutes (Comp. St. § 5690), which relates to the transshipment of merchandise in bond, does not now apply to intoxicating liquors for beverage purposes, and that the National Prohibition Act (41 Stat. 305) prohibits "in transit" shipments of such liquors touching at the ports of or moving through the United States, though the same originate in and are destined to foreign countries. By order of this court the marshal took possession of those five cases on arrival of the Cameronia, and holds them pending the decision of this motion.

The plaintiff for many years, as a part of its business, has carried liquors from Glasgow to the port of New York, where such liquors have been transshipped to destinations in the British possessions in North America and to foreign ports in the Gulf of Mexico and South America. This carriage of liquors by plaintiff to be transshipped in New York has yielded a large revenue to the plaintiff, and has continued since the adoption of the National Prohibition Act.

If this carriage is now prevented by the stoppage of these "in transit" shipments, liquor, it is claimed, will be sent from Great Britain to the British West Indies and South America countries by other routes, and plaintiff will suffer a severe loss, for which plaintiff alleges it has no adequate remedy at law. It is also claimed that, if such shipments should continue to be made for transshipment in the port of New York, there will be seizures here, which will involve a multiplicity of suits.

Plaintiff contends that the Attorney General was in error in the conclusion arrived at in the opinion of February 4, 1921, and that the Secretary of the Treasury exceeded his authority in directing the defendant to stop transshipments of liquor. Plaintiff accordingly presents the shipment of these five cases from Glasgow to Bermuda as a test case, and brings this suit to enjoin the defendant from stopping transshipments of this character. The answer contains some allegations which are argumentative in character, but no question of fact is raised as to the essential features of the controversy.

[1] Passing by any question as to whether plaintiff has sought the proper remedy, and assuming for the purposes of this opinion that it has so done, it is desirable to settle as promptly as possible the fundamental questions of the case. Such disposition, when ultimately had, will define the rights of the plaintiff and others similarly situated and the rights of the government. The Eighteenth Amendment provides as follows:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

It will be noted that not only is transportation prohibited, but exportation as well. In other words, in order to carry out this change in national policy, the exportation of liquor for beverage purposes was prohibited, even though a citizen of the United States or a person resident in the United States possessed liquor lawfully prior to the time when the constitutional amendment became effective.

The Congress enacted the National Prohibition Act in accordance with the power conferred by the constitutional amendment. Section 3 of title 2 of said act provides:

"Sec. 3. No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.

"Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as herein provided and the commissioner may, upon application issue permits therefor. * * *"

There is no provision in the National Prohibition Act which authorizes the transportation here desired in order that the transshipment sought may be accomplished. If, therefore, "transport" is, taken in its literal and ordinary sense, then the transportation which plaintiff would find necessary for its purposes is absolutely prohibited by the act. It is said, however, and correctly, that the principle of Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, should be here applied, and that the court should look beyond the literal definition of "transport," or "transportation," to ascertain the true meaning of these terms in the light of the legislative intent.

Considering and resorting only to the act itself, there is nowhere any indication that the Congress intended to except this kind of transportation from the prohibition of section 3. The act does permit the transportation of intoxicating liquor for purposes and under safeguards in the act set forth, and necessarily, in order to follow the mandate of the Constitution, such transportation or other dealing with intoxicating liquor must be for nonbeverage purposes. The Congress had plenary power to prohibit the transportation of liquor for beverage purposes, even though the liquor was destined for some place outside of the United States or territory subject to the jurisdiction thereof. It has the right to set up barriers and safeguards against the wrongful or improper diversion of intoxicating liquors, and it is well known in legislation that a statute will not only define offenses and prescribe the punishment therefor, but will also endeavor to surround the business or traffic dealt with in the statute with safeguards calculated to prevent offenses. It is therefore no answer to the provision as to prohibition of transportation to say that it must be presumed that the intended transportation would be lawfully carried out, and that therefore the Congress did not intend to prohibit a transaction which, if carried

to its orderly conclusion, could not have resulted in the use of intoxicating liquors in the United States for beverage purposes. The act provides a method by which intoxicating liquor intended for nonbeverage use may be, inter alia, transported, and the fact that transshipment of the character here concerned is not within any of the permit provisions of the statute illustrates the point that the Congress desired to safeguard against the illegal use of liquor destined to a foreign port, but needing transshipment within the United States, by not allowing it to be transported within the United States, and this, even though it be assumed, as it may be, that the foreign shipper intended that no part of the liquor should remain or be used in the United States for beverage purposes.

The act, in line with the constitutional amendment, forbids exportation for beverage purposes. The purpose of the constitutional amendment and of the act thus forbidding exportation was to destroy the traffic in liquor for beverage purposes, and thus to prevent manufacture, sale, or transportation in the United States, even though by exporting such liquor it would be used for beverage purposes outside of the United States and territory subject to the jurisdiction thereof. The doctrine of practical construction of a constitutional provision by legislative enactments is familiar and useful. An interesting illustration of this principle in respect of the New York state Constitution will be found in People ex rel. Einsfeld v. Murray, 149 N. Y. 367, at page 376, 44 N. E. 146, 32 L. R. A. 344.

The National Prohibition Act has thus practically construed the constitutional provision as to transportation, and, in any event, has not authorized the kind of transportation here desired. It may be within the power of the Congress to permit such transportation as was necessary to transship this liquor to a vessel destined for a foreign port, just as it permitted transportation of intoxicating liquors under various circumstances and for various purposes mentioned in the act. If the Congress had this power, it declined to exercise it, and, on the contrary, in simple and clear language indicated that transportation of intoxicating liquor was prohibited for any and every purpose, "except as authorized in this act," and, to repeat, the transportation here involved is not within the statutory exception.

It is quite true, as pointed out by the learned counsel for plaintiff, that the words "transportation" and "transport" must be construed in respect of the subject-matter which is being dealt with, as illustrated in Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. The court in that case said:

"That transportation of the liquors to the home of appellant, under the admitted circumstances, is not such as is prohibited by the section, is too apparent to justify detailed consideration *of the many provisions of the act inconsistent with a construction which would render such removal unlawful.* * * *"  (Italics mine.)

It is urged, however, by parity of reasoning, that United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653, is warrant for the proposition that the Congress did not intend by the National Prohibition Act to stop transshipments of this character. The so-called

Reed amendment to the Act of March 3, 1917 (39 Stat. 1058, 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]), read as follows:

"Whoever shall order, purchase, or cause intoxicating liquors to be *transported in interstate commerce*, except for scientific, sacramental, medicinal, and mechanical purposes, *into any state* or territory the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: Provided, that nothing herein shall authorize the shipment of liquor into any state contrary to the laws of such state."

This case might be likened to one where a foreign vessel stops at an American port, and then proceeds to a foreign port, without, however, transshipping the liquor destined for a foreign port. If, for instance, in the Gudger Case, Gudger had hired a vehicle to transport the liquor from Lynchburg, Va., to another place in Virginia, and thence to North Carolina, the case would have been different from that actually considered; i. e., that Gudger had a through ticket from Baltimore, Md., to Asheville, N. C., and at no time transported the liquor into Virginia. The court read the statute in accordance with its normal meaning and intent and with its simple language and said:

"Under this state of facts we think the court was clearly right in quashing the indictment, as we are of opinion that there is no ground for holding that the prohibition of the statute against transporting liquor in interstate commerce 'into any state or territory the laws of which state or territory prohibit the manufacture,' etc., includes the movement in interstate commerce through such a state to another. No elucidation of the text is needed to add cogency to this plain meaning, which would, however, be reinforced by the context. If there were need to resort to it, since the context makes clear that the word 'into' as used in the statute refers to the state of destination and not to the means by which that end is reached—the movement through one state as a mere incident of transportation to the state into which it is shipped."

The Gudger Case is quite different in principle from that at bar, where any transportation is prohibited except that which is definitely excepted.

[2] It is urged, however, that section 3005 of the United States Revised Statutes (Comp. St. § 5690) has not been repealed. That section provides:

"All merchandise arriving at any port of the United States destined for any foreign country may be entered at the custom house, and conveyed, in transit, through the territory of the United States, without the payment of duties, under such regulations as to examination and transportation as the Secretary of the Treasury may prescribe."

Title 2 of section 35 of the National Prohibition Act provides:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency, and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws."

[3] Repeals by implication are not favored; but, where a later statute is plainly inconsistent with a prior statute, the later statute necessarily repeals the prior statute. Section 3005 was a revenue act, or, in other words, it exempted from customs duties merchandise which otherwise would have been subject to duty. In the case at bar the

liquor was not subject to duty. It could not be imported. The introduction into this country from some foreign port of liquor for beverage purposes has no relation to revenues. Such liquor could not be lawfully introduced into this country because of the change in the national policy.

The very reason, therefore, for section 3005 disappears so far as affects intoxicating liquor for beverage purposes. In United States v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043, the court said:

"These statutes have long been part of the federal internal revenue legislation, and were passed under the authority of the taxing power conferred upon Congress by the Constitution of the United States. At the time of their enactment it was legal, so far as the federal government was concerned, to manufacture and sell ardent spirits for beverage purposes. The government derived large revenue from taxing the business, which it sought to realize and protect by the system of laws of which the sections in question were a part. This policy was radically changed by the adoption of the Eighteenth Amendment to the federal Constitution and the enactment of legislation to make the amendment effective. The Eighteenth Amendment in comprehensive and clear language prohibits the manufacture or sale of intoxicating liquors in the United States for beverage purposes, and confers upon Congress the power to enforce the amendment by appropriate legislation. To this end Congress passed a national prohibition law, known as the Volstead Act. 41 Stat. 305. It is a comprehensive statute intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes. * * * It is, of course, settled that repeals by implication are not favored. It is equally well settled that a later statute repeals former ones when clearly inconsistent with the earlier enactments. United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153. * * * The concluding phrase of section 35 by itself considered is strongly indicative of an intention to retain the old laws. But this section must be interpreted in view of the constitutional provision contained in the Eighteenth Amendment, and in view of the provisions of the Volstead Act intended to make that amendment effective. * * *"

In other words, section 3005 and section 3 of title 2 of the National Prohibition Act are inconsistent, and the former cannot stand. If the Congress has the power to permit this transshipment, it must indicate its purpose so to do, and this it has not done.

[4] Finally, it is said that the transshipment is allowable within the treaty rights of the Treaty of Washington proclaimed July 4, 1871 (17 Stat. 863), between the United States and Great Britain. Presidents Cleveland and Harrison held that article 29 of the treaty was abrogated. A court of first instance will not take a contrary view.

Nor does the case come within the Treaty of December 22, 1815 (8 Stat. 228). An elaborate discussion by this court of these treaties is deemed not necessary.

Motion denied, and bill dismissed, with costs.