## UNITED STATES v. HILL.

(District Court, D. Maryland.  November 11, 1924.)

1. Intoxicating liquors ⬅134—Manufacture of cider or fruit juices containing more than one-half of 1 per cent. of alcohol by volume for exclusive use in home not prohibited unless in fact intoxicating.

Under National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), prohibiting the manufacture of intoxicating liquor except as authorized in the act, and section 29 (Comp. St. Ann. Supp. 1923, § 10138½p), specifying penalties for violation, which are inapplicable to person who manufactures "nonintoxicating cider and fruit juices exclusively for use in his home," the manufacture of cider and fruit juices containing more than one-half of 1 per cent. of alcohol by volume, does not violate the statute where not in fact intoxicating, notwithstanding section 1 (Comp. St. Ann. Supp. 1923, § 10138½), defining intoxicating

liquor as any fermented liquor containing one-half of 1 per cent. or more of alcohol by volume, fit for use for beverage purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series. Intoxicating Liquor.]

2. **Intoxicating liquors** ☞2½, New, vol. 8A Key-No. Series—**Congress had power to establish standard for determining whether liquor was intoxicating.**

Congress had power to establish standard for determining whether liquor is intoxicating for purpose of carrying out the provisions of the Eighteenth Amendment.

3. **Intoxicating liquors** ☞143 — **Manufacture exclusively for use in home on occasions a year apart not a nuisance.**

One who manufactures intoxicating liquors exclusively for use in his own home, and not for commercial purposes, on two isolated occasions a year apart, does not maintain a common nuisance in violation of title 2, section 1, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½).

4. **Intoxicating liquors** ☞134 — **"Intoxicating liquors" defined.**

"Intoxicating liquor," within National Prohibition Act, tit. 2, § 29 (Comp. St. Ann. Supp. 1923, § 10138½p), permitting manufacture of cider and fruit juices containing more than one-half of 1 per cent. of alcohol by volume for exclusive use in home, if not in fact intoxicating, is liquor which contains such a proportion of alcohol that it will produce intoxication when imbibed in such quantities as it is practically possible for a man to drink.

5. **Intoxicating liquors** ☞224 — **Government had burden of proving intoxicating quality of cider and fruit juices manufactured exclusively for home use.**

In prosecution under National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), for manufacture of cider and fruit juices containing more than one-half of 1 per cent. of alcohol by volume, under title 2, § 29 (Comp. St. Ann. Supp. 1923, § 10138½p), for exclusive home use, government had burden of proving cider and fruit juices were in fact intoxicating, notwithstanding sections 32, 33 (Comp. St. Ann. Supp. 1923, §§ 10138½s, 10138½t).

John Philip Hill was indicted under the National Prohibition Act. Case submitted to jury.

Amos W. Woodcock, U. S. Dist. Atty., and James T. Carter, Asst. U. S. Dist. Atty., both of Baltimore, Md.

Arthur W. Machen, Jr., and Shirley Carter, both of Baltimore, Md., for defendant.

SOPER, District Judge. The defendant was indicted under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) in six counts.

The first count charged that the defendant, on September 27, 1923, at Baltimore, did unlawfully manufacture certain intoxicating liquor, to wit, 25 gallons of wine. The second count charged the unlawful possession of said wine. The third count charged that the defendant, on September 18, 1924, at Baltimore, did unlawfully manufacture certain intoxicating liquor, to wit, 30 gallons of cider. The fourth count charged the unlawful possession of said cider. The fifth count charged that on September 27, 1923, the defendant did maintain a common nuisance at No. 3 West Franklin street, Baltimore, by the manufacture of intoxicating liquor, to wit, 25 gallons of wine; and the sixth count charged that on September 18, 1924, the defendant did maintain a common nuisance at said place in that he manufactured 30 gallons of cider.

The government offered evidence tending to show the manufacture and possession of the wine and cider, as charged, containing alcohol in various amounts in excess of one-half of 1 per cent. thereof by volume. The government conceded that the wine and cider were manufactured by the defendant exclusively for use in his own home at No. 3 West Franklin street, Baltimore.

The defendant on his part offered evidence tending to show that the liquors manufactured, while containing more than one-half of 1 per cent. of alcohol by volume, were not in fact intoxicating, whereupon the government objected to the admissibility of the evidence, and the ruling hereinafter set out was made by the court. At the conclusion of the defendant's case, the government offered evidence tending to show that the liquors were intoxicating.

**Ruling of the Court on the Admissibility of Evidence.**

The question for decision is whether the defendant, admitting that he manufactured cider containing more than one-half of 1 per cent. of alcohol by volume, but contending that it was made exclusively for use in his own home, may offer evidence to show that the cider was in fact not intoxicating.

[1, 2] While the question is not free from doubt, in my opinion such evidence may be offered. The determination of the question depends upon the construction of certain provisions in title 2 of the National Prohibition Act. The doubt arises from the fact that Congress seems to have used the word "intoxicating" in a different sense in one section from that employed in another. Section 1 defines "intoxicating liquor" to include, among other things, any fermented liquor containing one-half of 1 per cent. or more of alcohol by volume which is fit for use for beverage purposes. It is well settled that for the purpose of carrying out the provisions of the Eighteenth Amendment, Congress had the power to establish this

standard. National Prohibition Cases, 253 U. S. 350, 40 S. Ct. 486, 588, 64 L. Ed. 946. Section 3 makes it an offense for any person to manufacture intoxicating liquor except as authorized in the act. Section 29 specifies the penalties for violation of the act and concludes with the following sentence: "The penalties provided in this act against the manufacture of liquor without a permit shall not apply to a person for manufacturing nonintoxicating cider and fruit juices exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered except to persons having permits to manufacture vinegar."

The government contends, and its contention is not without some force, that the words "nonintoxicating cider," which a person may manufacture for use in his own home, must be construed with reference to the definition of the term "intoxicating liquor" given in the first section, to wit, that it shall not contain one-half of 1 per cent. or more of alcohol by volume. But it is obvious that by the concluding sentence of section 29 of the act, Congress intended that persons manufacturing nonintoxicating cider for use in their homes, and not for sale, should be in a class by themselves, at least in some particulars, otherwise the sentence has no meaning or use whatsoever. If it was intended to punish persons for manufacturing cider for use in their own homes, which contains more than one-half of 1 per cent. of alcohol by volume, there was no necessity for the provision, for the act without the sentence already provided such punishment. If, on the other hand, it was intended by Congress that persons who made cider containing less than one-half of 1 per cent. by volume should not be subject to punishment, there was no need for the provision, for the reason that the other provisions of the act did not provide punishment for such person. The only reasonable explanation for singling out home manufacturers of cider and fruit juices for special mention in this section, to my mind, is that Congress did not intend to subject them to the strict provisions as to the alcoholic content of the product specified in section 1, but intended to prohibit the manufacture of cider and fruit juices for home use, which should be, in fact, intoxicating. If the section is so interpreted, then there is a reason for its insertion in the act.

This interpretation of the law is borne out at least to some extent by the discussion in the United States Senate on September 4, 1919, reported in the Congressional Record, vol. 58, pt. 5, pp. 4847 and 4848, when the sentence above quoted, or part of it, was first inserted in the act by amendment. The opinion was then expressed on the floor of the Senate by the chairman of the committee in charge of the bill that the cider and fruit juices prohibited as to manufacture for home use were those intoxicating in fact.

In order that the decision on this point may not lead to misapprehension, perhaps I should also state that it is perfectly clear that if cider or fruit juices, manufactured in the home, although exclusively for use in the home, are in fact intoxicating, it is a violation of the law to manufacture them; also, that the law specifically provides that the cider and fruit juices so manufactured shall not be sold or delivered except to persons having permits for the manufacture of vinegar.

At the conclusion of the evidence on both sides, the charge to the jury, hereinafter set out, was delivered by the court:

Mr. Foremen and Gentlemen of the Jury:

The time now approaches when it is necessary for you to perform the important and grave duty of deciding the issues of fact that have been raised in this case. As you are aware, the offense with which the grand jury has charged the defendant in this case is in its nature a criminal offense, a misdemeanor in the legal term, and therefore the defendant is entitled to the application of all those rules which under our system of jurisprudence the law furnishes for the protection of one so accused. The defendant is presumed to be innocent of the charge, notwithstanding the allegations in the indictment, until the jury is satisfied of his guilt. The burden of proof is on the United States to satisfy the jury of his guilt. And the jury must be satisfied beyond a reasonable doubt, before they are authorized to find a verdict of guilty. To be convinced beyond a reasonable doubt is to have an abiding conviction to a moral certainty of the guilt of the accused. Such a doubt as would justify the acquittal of the defendant must be a doubt for which you can give a reason. You are chosen from the body of the people to try this case, and sworn to try it according to the law and the evidence, and one of the reasons why the law furnishes to defendants in such cases the privilege of a jury trial is that a man is entitled to have the judgment of every day people of ordinary experiences rather than to have merely the judgment, or what might be called the professional judgment,

of a trained lawyer. The law therefore means that you shall use your common sense and give to the decision of the questions of fact the same consideration that you would give in making up your minds on any question that would be presented to you.

There are six counts in this indictment. You may consider first the fifth and sixth counts, because they are the more easily disposed of. The fifth count charges that in September, 1923, the defendant maintained a common nuisance at No. 3 West Franklin street, Baltimore, where intoxicating liquor was being manufactured in violation of the Prohibition Act, to wit, 25 gallons of wine. The sixth count charges that in September, 1924, the same sort of nuisance was maintained by the defendant at the same place, in that he manufactured 30 gallons of cider. These counts are based on section 21 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½jj), which declares that any place or building where intoxicating liquor is manufactured, sold, kept, or bartered, in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, to be a common nuisance, and that any person who maintains it shall be guilty of a misdemeanor.

[3] Now it is conceded in this case that the defendant had no commercial purpose in his activities in this respect. The liquor was not made for sale, but merely for use in the defendant's own residence. Moreover, there were but two isolated transactions a year apart. There is involved in the expression "common nuisance" the idea of continuity of action for a substantial period of time. This element is lacking in this case. It is entirely proper for the prosecuting officer to frame an indictment under several sections of the law so as to meet what may turn up in the actual trial of the case. The district attorney in this case has done so by preparing counts under this section, and under other sections; but as the case turns out, it is my opinion that there is not sufficient evidence to justify a verdict of guilty by this jury on the fifth and sixth counts, and I therefore charge you to find a verdict of not guilty on those counts. Strut v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548.

The matters for your decision are involved in the first four counts of the indictment. Counts 1 and 2 relate respectively to transactions on the 27th of September, 1923, the first count charging the unlawful manufacture of certain intoxicating liquor, to wit,

25 gallons of wine, the second count charging the unlawful possession of such intoxicating liquor. The third and fourth counts relate in the same way to the transactions in September, 1924, charging, respectively, the manufacture of intoxicating liquor, to wit, 30 gallons of cider, and the possession of 30 gallons of cider. It may be desirable to state that so far as exact dates are concerned, you need not be bothered by them, and the same thing is true as to exact quantities. If you find that the offenses were committed on any date of the years mentioned, and that any quantities were manufactured and possessed, the charges are made out.

The issues of fact to which your attention is directed are rather narrow and few, for the reason that there is no dispute in this case but that the defendant both manufactured and possessed the liquors in question. He has testified to that effect on the stand. So that that part of the charge is made out. The question for you to decide is whether the articles which the defendant admits that he manufactured and possessed answer to the description of the articles in the counts of the indictment. Now the description in the first and second counts is: "Intoxicating liquor, to wit, twenty-five gallons of wine." The question for you to decide on these two counts are two in number:

(1) Was the article wine?

(2) Was it intoxicating?

The position of the defendant on the first question is that the article which he manufactured and possessed in September, 1923, was not wine, for the reason that the grape juice manufactured was still in process of fermentation. His contention is that so long as it was fermenting, whatever else it might be, it was not wine. Now, it is plain from the evidence, if we are to accept the definition contended for by the defendant, that what the defendant intended to make was wine according to his definition, and the only reason why it is possible to make the contention in this case that it was not wine is that on October 11, 1923, by order of this court, he was forbidden to manufacture wine and was further directed to maintain what he had then manufactured in its condition without further disturbance. I think it is entirely fair to say to you, as claimed by the defendant, that he is not responsible for what happened to the wine after he was ordered to lock it up and did so. But did he, prior to that date, manufacture and possess wine? The defendant has produced two witnesses, Mr. Carroll and Mr. Boone,

who were experienced men in the handling of whiskies and wines and liquors as wholesale dealers for a considerable period of time in Baltimore City. Their testimony is that from their standpoint as dealers in liquor and dealers in wines, an article which was still fermenting was not wine. Their testimony seems to be to amount substantially to an expression of opinion on their part that grape juice still in process of fermentation is not commercially known as wine, or was not so known during the period when they handled it.

The defendant is not charged with making wine for sale; he is not charged with making wine of a commercial quality. It is not important whether this was commercial wine or not. It is not important whether it was good or bad wine. The question for your decision, on this point, is whether it was wine. You will therefore give consideration to the testimony produced on behalf of the defendant on that point.

There is testimony also adduced which you should consider on the part of the government given in rebuttal after the defendant's witnesses had testified: The testimony of the chemist who analyzed the article, the testimony of Dr. Harvey W. Wiley and Mr. Alwood. Dr. Wiley, a man who, according to his testimony, has had very wide, I may say international, experience on the subject, having served as a juror at various international exhibitions, and having, so far as one could judge from his testimony, familiarity with the subject, testified that whether it was fermenting or not, the grape juice was wine, and that such an article was known to manufacturers as wine. Mr. Alwood, a man of considerable technical experience and knowledge in dealing with the subject for a considerable number of years, gave similar testimony.

The government's testimony also is to this effect, testimony given both by Mr. Alwood and by the other government chemists, that under the circumstances of this manufacture, the process of fermentation, having begun on or about the 7th of September, was substantially finished on the 27th of September. The amounts of alcohol which were produced by fermentation are given in the evidence in regard to the keg said to have been purchased from New York, 11.64 per cent. of alcohol, and as to two other samples to which sugar had been added, 11.68 and 8.28 per cent., respectively, and as to a fourth sample to which no sugar had been added, 3.34 per cent.

Mr. Alwood testified that he had himself many times made wine by the use of grapes and the addition of sugar, and that, considering the period of 20 days and the alcoholic content that was found in this wine, it was his opinion that the process of fermentation was substantially finished.

The date of September 27th, however, is not the date upon which the defendant's responsibility for the condition of the wine was at an end. The wine was kept by him for 14 or 15 days after that time, just as it was when the chemist examined it, and it was not until October 11th or 12th that the wine, or the article, whatever you may decide it to be, was locked up.

You will then consider the testimony of these gentlemen, and if you give it credit, even if you believe that grape juice is not wine until the fermentation has completely finished, you will then determine whether or not, in view of this testimony, the fermentation was or was not finished, or likely to have been finished after an interval beginning on September 7th and ending on October 11th. So far as I recall, there was no testimony on the part of the defendant, and I shall be glad if counsel will correct me if I am wrong in this respect—as to whether or not fermentation had ceased on the date on which it was locked up.

Now, then, the second question for you to determine on the first two counts, if you decide that the article was wine, is whether or not it was intoxicating. Section 1 of title 2 of the act defines intoxicating liquor to be any liquor containing one-half of 1 per centum or more of alcohol by volume, which is fit for use for beverage purposes. That definition of "intoxicating," however, does not apply to this case. Under a subsequent section of the act, section 29, it was provided that the penalties in the act should not apply to a person manufacturing nonintoxicating cider and fruit juices exclusively for use in his home. It has been conceded in this case that what the defendant did was to manufacture grape juice in his home by adding sugar, exclusively for use in his home. I therefore charge you that it is necessary for you to find, before you can find a verdict of guilty on the first two counts, that the wine—and I may call it that for purposes of further charge, leaving the matter to your determination, however—was intoxicating in fact.

[4] What do we mean by intoxication? Two extremes have developed in the testimony in this case, neither of which seem to me to be a fair interpretation of what

that word means in the law, no matter what it may mean elsewhere. There is testimony on the part of Dr. Howard A. Kelly and Dr. Wiley that any amount of alcohol taken into the human system has an effect which they describe as intoxicating. That is not the meaning of the term as used in the law. The other extreme is illustrated by at least one of the witnesses for the defendant, whose name I do not recall, but who said that he would scarcely be affected by whisky before he had taken a dozen or two drinks. That determination of whether or not liquor is intoxicating is not what is meant in the law. Intoxicating liquor is liquor which contains such a proportion of alcohol that it will produce intoxication when imbibed in such quantities as it is practically possible for a man to drink. And that is the test that you are to apply to the decision of this issue of fact.

You will consider in that connection the alcoholic content of the liquors. You have heard them given in evidence, and I have already repeated them to you. So far as the wine is concerned, it runs from 3.34 to 11.68 per cent. If in your judgment any of that wine was intoxicating, whether or not in your judgment all of it was, the charge on the first two counts is made out.

Now the defendant has offered certain evidence in the case of persons who, with himself, drank some of the wine, I believe on the date when the chemist took the samples. Mr. Dimarco and several of the young men from the newspapers took some of it. You have heard their testimony as to what effect it had upon them. You are, of course, entitled and in duty bound to take that into consideration. You should consider, however, whether or not there was a fair test of the intoxicating qualities of the liquor. It is not a question in any case whether the drink which a particular individual took at a particular time made him drunk, but whether or not the article is capable of producing drunkenness. Perhaps I might interpolate here that intoxication in this section of the law means what you and I ordinarily understand as average human beings by the word "drunkenness." If this wine was capable of producing drunkenness when taken in sufficient quantities, that is to say, taken in such quantities as it was practically possible for a man to drink, then it was intoxicating.

The government has offered some testimony here by Dr. Kelly and by Dr. Wiley and others to the effect that it was intoxicating. I have already cautioned you, I think, that the definition of intoxication given by these two doctors, to the effect that any amount of alcohol produces an effect, therefore a toxic or intoxicating effect, does not satisfy the term "intoxicating" as used in the law. But their testimony, nevertheless, should be considered. You were shown by ocular demonstration the amount of brandy which would contain a like amount of alcohol as a quart of the cider which was manufactured by the defendant. Now the wine which we are now discussing contained, some of it, approximately four times as much alcohol as the cider. If you can visualize the amount of brandy pictorially represented by Dr. Kelly as containing as much alcohol as was in a quart of the cider, and multiply that by four times, you get an idea of the brandy equivalent of a quart of the wine which contained the highest alcoholic content. Now, then, if you believe it was practically possible for a man to drink two, three, or four quarts of that liquid, you would be able to figure out how much would be represented by an equivalent of brandy. Matters of that sort may assist you in determining this question.

The illustration given by Dr. Wiley of his experience abroad at the students' drinking bout throws some light on the legal definition which I have given you of intoxication. According to his testimony, the students were drinking 3 per cent. beer, and after a long night and after the consumption of many quarts a considerable number of them were drunk. The beer which produced the results described by Dr. Wiley was intoxicating in the sense in which I have described it.

Now, gentlemen, when you come to the third and fourth counts of the indictment, the only question for you to decide is whether the cider was intoxicating. Everything charged in those counts is admitted except the intoxicating quality of the product. What I have said as to the definition of intoxicating and the comments I have made thereon, qualified, however, by the fact that the highest alcoholic content of the cider was 2.7 per cent., are pertinent to these counts, and you will make up your verdict accordingly.

Gentlemen, this case is of some considerable public importance, and your duties, of course, are correspondingly great. The matter has had wide publicity. It is a fact, I think, borne out by the evidence, and even if it is not borne out by the evidence I am sure it is a matter which all of us know, that the defendant has been quite ac-

tive in opposition to this law. That is a matter, gentlemen of the jury, which should be left out of your consideration. The question of prohibition and the use or misuse of intoxicating liquor has been the subject of public discussion for many years, and continues to be the subject of discussion. It naturally gives rise to great differences of opinion, and, on occasion, to bitterness of feeling. It is your duty to try this case without reference to that discussion and that feeling. You should not allow yourselves to be prejudiced in any measure whatsoever against the defendant in case any of you should happen to disapprove of his agitation and his actions in this case. You should not allow yourselves to be swayed in his favor because he has held and still holds a high position in this community, or because you are in favor of what he has been endeavoring to do, or because you personally like his actions in this case. I need not remind you that you are here as sworn public officers to try this case according to the law and according to the evidence, and there are but these narrow issues of fact for you to determine: As to the first two counts, was the substance wine, and was it intoxicating; and as to the third and fourth counts, was the cider intoxicating? When you have decided those questions, you have done your full duty.

Your verdict, as I have already said, on the last two counts will be not guilty.

The responsibility in this case for the decision of these questions of fact is yours. It is my duty to charge you upon the law. I am responsible for that, and if I am wrong, I may be corrected elsewhere. The decision of the facts, however, is yours, and you are at perfect liberty to disregard any suggestions or comments which I have made upon the evidence which do not meet with your approval. The Constitution and law of the land compels a jury trial in criminal cases in this court and a jury trial means a decision of the jury, and not of the judge.

Are there any exceptions or any suggestions in regard to the charge?

Mr. Machen: I understood from your honor's charge that the principle of reasonable doubt, if the jury has any reasonable doubt as to any of the essential elements of the crime, applies to this question of intoxication as well as to all other elements of the case?

The Court: Yes. There are no elements in the case for them to decide except those that I have commented on, and the doctrine of reasonable doubt applies to them.

District Attorney Woodcock: I desire on behalf of the government to suggest that in our view of the law, the burden of proof in this case is upon the defendant to show that the wine and cider was not intoxicating, basing that on section 33 of the law which is a general section shifting the burden of proof when possession is shown; and, secondly, on the fact that the whole defense is an exception to the general prohibitions in the law.

The Court: This matter has now been called to my attention for the first time. You refer to section 33?

Mr. Woodcock: Yes, and also that the defense is a negative averment which is referred to also in section 32.

[5] The Court: I think it is well that the point may be raised. It may serve as a basis for some authoritative decision later on. But, in my opinion, while the burden may be upon the defendant to show that he was manufacturing the fruit juices exclusively for use in his home, that element of the defense having been conceded, the burden of proof on the subject of the intoxicating quality of the liquors does not shift.