## STREET *v.* LINCOLN SAFE DEPOSIT COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 278.   Argued April 26, 1920.—Decided November 8, 1920.

The owner of intoxicating liquors, lawfully acquired, stored them prior to the effective date of the National Prohibition Act in a room leased in a public warehouse and so kept them thereafter with the intention of using them only for consumption by himself and his family or *bona fide* guests. It was admitted that they were in his "exclusive possession and control," and the functions of the warehouse owner were merely to protect against fire, theft, etc., and to afford access for lawful purposes. *Held:* (1) That the warehouse owner might lawfully permit such storage of the liquors to continue after the National Prohibition Act became effective; (2) that the warehouse owner did not "possess" the liquors, within the meaning of § 3 of the act, nor would it "deliver" them, in the sense of that section, if it permitted their owner to have access to them to take them to his dwelling for lawful use; (3) nor would it be unlawful under that section to transport the liquors from the place of storage to the home of their owner, under permit from the Bureau of Internal Revenue. Pp. 90 *et seq.*

The act must be interpreted in the light of the Eighteenth Amendment, which indicates no purpose to confiscate liquors lawfully owned when it became effective and which the owner intended to use in a lawful manner. P. 90.

The declaration of § 25 of the act that it shall be unlawful "to have or possess any liquor intended for use in violating this title," does not apply to liquors held in storage by their lawful owner solely and in good faith for the purpose of preserving and protecting them until they shall be consumed by the owner and his family or *bona fide* guests; for that use is declared lawful by § 33. P. 91.

In § 21, denouncing as a nuisance, "any room, house, building, . . . or place where intoxicating liquor is manufactured, sold, kept," etc., the word "kept" means kept for sale or barter or other commercial purposes. *Noscitur a sociis.* P. 92.

An intention to confiscate private property, even in intoxicating liquors, will not be raised by inference and construction from provisions of law which have ample field for other operation in effecting a purpose clearly indicated and declared.  P. 95.

267 Fed. Rep. 706, reversed.

THE case is stated in the opinion.

*Mr. Joseph S. Auerbach* and *Mr. Charles H. Tuttle,* with whom *Mr. Martin A. Schenck* was on the brief, for appellant.

*Mr. Assistant Attorney General Frierson,* with whom *The Solicitor General* was on the brief, for appellees.

MR. JUSTICE CLARKE delivered the opinion of the court.

By the motion to dismiss the bill filed in this suit it is admitted: that the defendant Lincoln Safe Deposit Company is a corporation, organized under the laws of the State of New York, and authorized to engage in the warehousing business; that prior to the effective date of the National Prohibition (Volstead) Act [41 Stat. 305] the appellant was the lessee of a room in the warehouse of the defendant Deposit Company, in which he had stored wines and liquors lawfully acquired by him, which "are in his exclusive possession and control, and are intended, and will be used only for personal consumption by himself and the members of his family or his bona fide guests;" that the defendant Daniel L. Porter is an agent of the Commissioner of Internal Revenue, charged with the duty of enforcing the Volstead Act, who in his official capacity has publicly declared and threatened that such storage of liquor by the defendant Deposit Company would be unlawful after the Volstead Act became effective and would expose plaintiff and the Deposit Company to the penalties of that act, which would be enforced against them; that

the appellant desired to continue to store his liquors in said rented room after the Volstead Act should become effective and intended to report the same to the Commissioner of Internal Revenue, as therein required; and that the Deposit Company, moved wholly by the notices and threats of defendant Porter, had notified plaintiff that he must remove his liquors from its warehouse or that it would remove and deliver them to Porter as outlawed property, to be dealt with under the Volstead Act after it became effective.

Averring as a matter of law that such possession of liquors in a warehouse is not forbidden by the Eighteenth Amendment or the Volstead Act, the appellant prayed that an injunction should issue, restraining the defendants from interfering with his possession of the room in the warehouse and from removing or disposing of his liquors.

The motion to dismiss was sustained, and a constitutional question being involved, appellant brought the case by direct appeal to this court.

Thus is presented for decision the question:

May a warehousing corporation lawfully permit to be stored in its warehouse, after the effective date of the Volstead Act, liquors admitted to have been lawfully acquired before that date and which are so stored, solely and in good faith, for the purpose of preserving and protecting them until they shall be consumed by the owner and his family or bona fide guests?

Since the Volstead Act has been held by this court to be a valid law, the answer to this question must be found in its provisions, and the sections of it which it is argued sustain the negative answer to the question given by the court below, are 3, 21 and 25 of Title II.

Since here, as always, the purpose of Congress in enacting a law is of importance in determining the meaning of it, it is noteworthy that Title II of the Volstead Act was passed under the grant of power to enforce the first section

of the Eighteenth Amendment to the Constitution of the United States, which prohibits the manufacture, sale and transportation of intoxicating liquors for beverage purposes, but does not indicate any purpose to confiscate liquors lawfully owned at the time the Amendment should become effective and which the owner intended to use in a lawful manner.

Section 33 of the act is the only one which deals specifically with liquors lawfully acquired before it should take effect, and it is therefore of first importance in the consideration of the case before us. That section declares:

"It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein."

The admissions of fact under which this case is considered bring the liquors here involved precisely within these immunity provisions of § 33, except that they are stored in a public warehouse instead of in a private dwelling. They were lawfully acquired and were intended for a lawful use, and thus the question is narrowed to whether such custody by the warehouse company as is shown by the admissions was forbidden by the act.

Coming now to the sections relied upon as rendering the custody or possession of the liquors by the warehouse company unlawful:

Section 25 declares that "It shall be unlawful to have or possess any liquor . . . intended for use in violating this title . . . ."

But since § 33 declares that the uses to which it is admitted the plaintiff intends to devote his liquors are not unlawful, obviously this section does not apply to the case,

for the unlawfulness declared by it is conditioned upon the intended use in violating the act.

Section 21 declares that "Any room, house, building, . . . or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance," and for the maintaining of such a place penalties are provided.

The word "kept" in this section is the only one of possible application to the case at bar, and the words ith which it is immediately associated are such that as here used it plainly means kept for sale or barter or other commercial purpose. Its inapplicability to this case is apparent. *Noscitur a sociis.* *United States* v. *Louisville & Nashville R. R. Co.*, 236 U. S. 318, 334.

Section 3, which is the omnibus section of the act, provides that, "No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this Act, and all the provisions of this Act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

It is argued that the declaration herein that no person shall "possess," "transport" or "deliver" intoxicating liquors is applicable to this case, because the warehouse company is not "authorized" by the act to "possess" them and because they cannot be used, even lawfully, by the plaintiff unless delivered and taken away from the warehouse.

By the admissions the appellant is lessee of the room in which the liquors are stored and he "is in the exclusive possession and control of them." Thereby the relation of the warehouse company to the liquors is restricted to the

public function of furnishing such police, fire, and other protection to its buildings and their contents as the law or its lease requires on the part of such company and to allowing the plaintiff to have access to his property in order that he may remove it for an admittedly lawful purpose. The company could not sell, give away or otherwise transfer the liquors to anyone other than in this limited way to the plaintiff owner.

The purpose of the Eighteenth Amendment and of this act considered, we cannot bring ourselves to the conclusion that such a relation to the liquors on the part of the storage company as is here disclosed constitutes a possession of them within the meaning of this section of the act.

It is equally clear that to permit the owner to have access to the liquors to take them to his dwelling for lawful use is not a delivery of them within the meaning of this third section.

That transportation of the liquors to the home of appellant, under the admitted circumstances, is not such as is prohibited by the section is too apparent to justify detailed consideration of the many provisions of the act inconsistent with a construction which would render such removal unlawful, and that the act is understood by the officers charged with its execution as permitting such transportation is shown by the provision of the regulations of the Bureau of Internal Revenue authorizing permits for the transportation of liquors from one permanent residence of an owner to another in case of his removal, although no such transfer is in terms provided for by the act.

Clearly there is like administrative power under the act to so regulate the transfer of such stored liquors from a warehouse to the dwelling of the owner as to prevent their being used to evade the prohibitions of the act or to substantially interfere with its effective enforcement.

Thus it is plain that in the sections of the act relied upon

there is no specific prohibition against the storage of liquors, under the circumstances admitted to exist in this case, and we find no other provisions by which such a custody is rendered unlawful.

The implication from another provision of § 33, than the one quoted above, confirms this conclusion. It reads:

"After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title."

Assuming that the unexplained presence of the liquors in the Company's warehouse would give rise to the prescribed presumption, yet, if that presumption should be rebutted by appropriate testimony (as it is in this case by admissions) that the liquor to which it is applied is not being kept for the purpose of sale, barter, exchange, furnishing or otherwise disposing of it in violation of the provisions of the title, the implication is plain that the possession should be considered not unlawful, even though it be by a person "not legally permitted,"—that is by a person not holding a technical permit to possess it, such as is provided for in the act.

Without saying that there may not be other cases, the one at bar seems to be fairly within the scope of this obvious implication of § 33.

It may be that the custody of liquors by a warehouse company was thus not declared to be unlawful because the writers of the act did not have such a case in mind, but it was more probably because Congress would not consent to allow lawful possession and use of liquors in dwellings having storage facilities for them, while denying the only possible means of preserving and protecting such liquors to persons with less commodious homes. The Congress was concerned with the great problem of preventing the manu-

facture and sale of intoxicating liquors for beverage purposes in the future, and it seems to have given but slight attention to the consumption of such relatively small amounts of such liquors as might be in existence in private ownership and intended for consumption by the owner, his family or his guests, when the Amendment and the act should take effect.

An intention to confiscate private property, even in intoxicating liquors, will not be raised by inference and construction from provisions of law which have ample field for other operation in effecting a purpose clearly indicated and declared.

It results that the decree of the District Court must be

*Reversed.*

MR. JUSTICE McREYNOLDS concurring.

I concur in the judgment of the court, but do not assent to the reasoning advanced to support it. I think the Volstead Act was properly interpreted by the court below, but to enforce it as thus construed would result in virtual confiscation of lawfully acquired liquors by preventing or unduly interfering with their consumption by the owner. The Eighteenth Amendment gave no such power to Congress. Manufacture, sale and transportation are the things prohibited,—not personal use.