## Petition of SHOEMAKER.

(District Court, W. D. Pennsylvania. November 2, 1925.)

No. 603.

**1. Intoxicating liquors ⟨©⟩255—Owner held entitled to return of intoxicating liquor seized through unlawful search and seizure.**

Owner of whisky taken from dwelling of another, where it was stored, through unlawful search and seizure, in violation of Const. Amends. 4, 5, *held* entitled to return, despite

Volstead Act, tit. 2, § 33 (Comp. St. Ann. Supp. 1923, § 10138½t), declaring possession without permit prima facie evidence that possession is unlawful, or fact that acquisition and possession may have been in fact unlawful.

**2. Intoxicating liquors ⟨©⟩139—Possession, except with intent to violate law, is not unlawful.**

Possession of intoxicating liquor, except for purpose of violating law, is not unlawful under Const. Amend. 18, or Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), though under section 33, tit. 2, thereof (Comp. St. Ann. Supp. 1923, § 10138½t), possession by one not holding permit is prima facie evidence that possession is unlawful.

Petition by S. O. Shoemaker for release and return of whisky illegally seized. Petition granted.

Wm. F. Duffy, of Pittsburgh, Pa., for petitioner.

Walter Lyon, of Pittsburgh, Pa., for the United States.

THOMSON, District Judge. S. O. Shoemaker filed his petition, asking the court to order the release and return of 142 cases of whisky alleged to have been illegally seized by federal prohibition agents. On the filing of the petition, the matter was referred to Ray Patton Smith, Esq., a United States commissioner for this district, to take the testimony and report the same to the court, together with his recommendation thereon. The commissioner, in obedience to such order, took the testimony, from which he made certain findings of fact. These findings, I think, are sustained by the evidence and may be summarized as follows:

[1] The petitioner, on or about the 16th day of October, 1920, subsequent to the passage of the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and without any permit as required by that act, obtained 142 cases of whisky from Benjamin Nieman, of Pittsburgh, which he thereupon stored, as his property, in the cellar of the home or private dwelling of one John F. Patterson, situate in Twin Rocks, Cambria county, in this district. The whisky was marked "Nonbeverage," as appears on the labels, which read as follows: "These spirits were taxpaid at the nonbeverage rate for medicinal purpose only. Sale or use for other purposes will subject seller or user to heavy penalties." The commissioner finds as a fact that the petitioner had purchased the liquor and was holding it with the intent of going into the wholesale drug business at a later date, but had no permit for the wholesale drug business at the time of its purchase or seizure. The petitioner had agreed

with Patterson to pay the sum of $5 a month for storage, but no money had been paid for the 10 days which elapsed between the storage of the liquor and its subsequent seizure.

On October 25, 1920, A. B. Cooper and S. M. Palmer, disguised as hunters, went to the hotel of petitioner at Twin Rocks, and endeavored to purchase some liquor, but were unable to do so. The next day, October 26th, they watched the Patterson home, and about 6 o'clock in the evening went to the Patterson home, and when the door was opened told Mr. Patterson that they had heard he was keeping whisky in his cellar belonging to Mr. Shoemaker. The latter replied that there was whisky in his cellar belonging to Mr. Shoemaker. The prohibition agents then told Patterson who they were, showed their badges and certificates of appointment, and asked the privilege of seeing the liquor, which was granted. This done, Palmer stayed in the house and took supper with the Patterson family, while Cooper went to Johnstown to get trucks to remove the liquor. Later in the night Cooper returned with three trucks, and by midnight the agents loaded the whisky on the trucks, hauled it away, and stored it in the basement of the Johnstown post office, from which it was subsequently, by order of court, delivered into the custody of the United States marshal. The government agents had no search warrants or any legal authority whatever to enter the Patterson home for the purpose of search, or to seize and remove the liquors found therein.

The commissioner finds that, when the prohibition agents were permitted to enter the house and examine the liquor, Mr. Patterson and his wife were much excited, and Mrs. Patterson cried and was much agitated. The master finds, and the facts fully warrant the finding, that the search and seizure were not made with the consent of the owner of the building searched; that the apparent consent of the Pattersons, on the production of the agents' badges and certificates of appointment, was a recognition of supposed authority to enter and search, rather than an acquiescence or consent to act without legal right or authority. It is a striking commentary on the citizen's obedience to law that he is as ready to yield to an apparent authority of the government, howsoever oppressive, as to those mandates of the government clothed with the highest sanction.

Under this state of facts, what are the legal rights of the parties? The question is not difficult of solution. The search and seizure were wholly without legal authority. When the officers, without a search warrant regularly issued on competent authority, assumed to enter Mr. Patterson's home and search and seize the liquors stored in his cellar, they violated both the Fourth and Fifth Amendments of the Constitution of the United States. They not only violated Mr. Patterson's constitutional rights, by entering his home without authority for the purpose of search and seizure, but they violated Mr. Shoemaker's rights as guaranteed by the Fourth Amendment by seizing his property without warrant. The Fourth Amendment provides: "No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is no justification for the illegal search and seizure for the government to say that the petitioner acquired and held the liquors illegally. Such a doctrine would permit the invasion of the home, a search for and seizure of property, and then permit the lawbreaker to question the title or right of possession of the property which he had illegally seized. The law will tolerate no such defense. It will refuse to hear the violater of the law, who seeks to question the ownership or right of possession of the property illegally seized. His mouth is closed by his illegal acts. He must restore the property regardless of the title or right of possession of him from whom the property was illegally taken. Subsequently, any questions as to title or right of possession must be worked out through an orderly and legal course of procedure. Let it be assumed that Shoemaker had acquired the liquors without warrant of law; the government could not assert this fact in this proceeding, which discloses the illegal seizure by the government agents.

It is sought to justify such position by references to the provisions of section 33 of title 2 of the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138½t), which provides as follows: "After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facia evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this Title."

[2] This is a rule of evidence, to be applied by the court under proper instructions to the jury, on the trial of a case involving

the alleged illegal possession of liquor. This section recognizes, as other provisions of the Volstead Act do, that liquors may be legally or illegally possessed; that this becomes a matter of ultimate proof; that, if the finding is that the liquors were kept for the purpose of being sold, bartered, or otherwise disposed of in violation of the law, then the possession would be illegal; otherwise, the possession would be legal. This is a question of fact, to be solved by a jury under the facts and the legal rules of evidence. The presumption, however, which arises from possession as a matter of evidence, cannot be asserted by an officer, nor invoked by the government, as a sanction for the seizure of the liquors otherwise than in strict accordance with the Constitution and the law. In other words, possession is not made an offense under the Eighteenth Amendment, nor is possession of itself made an offense under the Volstead Act. It only becomes such when the possession is for the purpose of violating the law, and when this fact is properly averred and legally found.

This general doctrine is recognized by the Supreme Court in Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548, wherein, in reference to section 33, the court said: "Assuming that the unexplained presence of the liquors in the company's warehouse would give rise to the prescribed presumption, yet, if that presumption should be rebutted by appropriate testimony (as it is in this case by admissions) that the liquor to which it is applied is not being kept for the purpose of sale, barter, exchange, furnishing or otherwise disposing of it in violation of the provisions of the title, the implication is plain that the possession should be considered not unlawful, even though it be by a person 'not legally permitted'—that is, by a person not holding a technical permit to possess it, such as is provided for in the act."

I agree with the learned commissioner, not only with his findings of fact, but with his general conclusion of law, wherein he recommends the return of the liquors in question.

It appears that at the time the petition was presented there were only 126 cases of whisky in the possession of the United States marshal; 16 cases having in some unexplained manner disappeared. Let an order be drawn, directing the marshal to return to the said S. O. Shoemaker the said 126 cases of whisky involved in this proceeding, without cost to the said Shoemaker.