## ROSSI v. UNITED STATES (six cases).[*]

(Circuit Court of Appeals, Eighth Circuit. December 20, 1926.)

Nos. 7468–7473.

1. **Intoxicating liquors** ⬤===143—Liquor must be "kept" for commercial purposes to render place "common nuisance" (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).

To constitute a "common nuisance," under National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), because intoxicating liquors are "kept" in the premises, they must be kept for commercial purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public or Common Nuisance.]

2. **Intoxicating liquors** ⬤===167—Owner of place where liquor is sold, etc., in violation of law, with his knowledge, maintains "common nuisance" (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).

If a person maintains a place where intoxicating liquor, to his knowledge, is manufactured, sold, kept, or bartered, in violation of National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), he is guilty of maintaining a "common nuisance," though he did not personally possess, sell, keep, or manufacture the liquor.

3. **Intoxicating liquors** ⬤===143—Place where liquor was habitually brought and consumed by guests, with knowledge of proprietor, held "common nuisance" (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).

A roadhouse or "ranch," where liquor is habitually brought by guests and there consumed, with knowledge of the proprietor and to his profit, is a "common nuisance," under National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), and the proprietor is guilty of maintaining the same.

4. **Intoxicating liquors** ⬤===143—Place where liquor could be purchased by guests whenever desired, though from outside parties, held common nuisance; "kept" (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).

A place where guests can purchase liquor whenever desired, from a vendor who appears when summoned, is one where intoxicating liquor is "kept," within the meaning of National Prohibition Act, tit. 2, § 21 (Comp. St. §

[*]Rehearing denied March 22, 1927.

10138½jj), and is a common nuisance though the liquor is not kept nor sold by the proprietor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Keep.]

5. Judges ⚖16(1)—Right to designation of another judge, on ground of bias and prejudice, held waived by failure to file petition until day of trial (Judicial Code, § 21 [Comp. St. § 988]).

An application and affidavit, under Judicial Code, § 21 (Comp. St. § 988), for designation of another judge on the ground of bias and prejudice of the trial judge, not filed until day of trial, though the facts alleged had long been known to the parties, held too late, and overruling of the application not error.

In Error to the District Court of the United States for the District of Colorado; J. Foster Symes, Judge.

Criminal prosecutions by the United States against Manlio Rossi, alias Mike Rossi, Eugene Rossi, alias Gene Rossi, and Caroline Rossi. Judgments of conviction, and defendants bring error. Also proceedings for contempt for violation of injunction against the same defendants. Judgment finding defendants guilty of contempt, and they bring error. All judgments affirmed.

Philip Hornbein, of Denver, Colo. (Theodore Epstein, of Denver, Colo., on the brief), for plaintiffs in error.

Forrest C. Northcutt, Asst. U. S. Atty., of Denver, Colo. (George Stephan, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before KENYON, Circuit Judge, and SCOTT and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. Plaintiffs in error for convenience will be designated as defendants. Two sets of cases are involved. Nos. 7468, 7469, and 7470 were contempt proceedings under section 24, chapter 85, title 2, of the National Prohibition Act (41 Stat. 315, Comp. Stat. § 10138½ll). In these cases defendants were found guilty of violating an injunction issued under section 21 of said act (41 Stat. 314 [Comp. Stat. § 10138½ jj]) against property known as the "Moonlight Ranch" in Arapahoe county, Colo. Defendants Manlio (or Mike) Rossi and Caroline Rossi were each sentenced to be confined in the county jail for a period of one year and to pay a fine of $1,000. Defendant, Eugene Rossi, a brother of Mike Rossi, was sentenced to confinement in the county jail for a period of eight months and to pay a fine of $1,000. This series of cases will be hereinafter referred to as the "contempt case."

Cases numbered 7471, 7472 and 7473 relate to a charge filed by information against defendants for violation of section 21, title 2, of the Act of Congress approved October 28, 1919, known as the National Prohibition Act (41 Stat. 314 [Comp. Stat. § 10138½jj]), for maintaining a common nuisance on the same premises; the specific charge being that defendants on said premises "did then and there at divers times theretofore knowingly, willfully and unlawfully keep, possess, furnish, barter, and sell intoxicating liquor, to wit, distilled spirits, to wit, whisky, fit for beverage purposes, in violation of the said National Prohibition Act." Defendants were found guilty by a jury, and each was sentenced to serve one year in jail and to pay a fine of $1,000. Both prosecutions arise out of substantially the same facts, and most of the questions raised are common to both cases. We shall therefore consider the cases in one opinion, directing attention as we proceed to the questions not common to both sets of cases.

Section 21 of the National Prohibition Act, upon which both prosecutions are based, is as follows:

"Section 10138½jj. *Common Nuisance; What Are; Punishment for Maintenance; Liability of Owners of Buildings.*—Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction." Act Oct. 28, 1919, c. 85, tit. 2, § 21, 41 Stat. 314.

The statute makes every place where intoxicating liquors are manufactured, kept, sold, and bartered in violation of the National Prohibition Act a common nuisance, and makes the parties maintaining the same guilty of a nuisance. The Moonlight Ranch was owned by Caroline Rossi. Mike Rossi was her

husband, and the evidence shows he carried on the ranch with the assistance of his wife, Caroline, who was the attendant at the bar, and Gene Rossi who had charge of the dance floor and dining room. The Moonlight Ranch was near Denver, and consisted of a 40-acre tract, upon which there were a large building and several outbuildings, surrounded by a wire fence. There was a combined dance hall and restaurant, with a bar where soft drinks were sold. Tables and booths were placed along the sides. Meals were served, a regular cook was employed, and ample provisions were always in stock. A colored orchestra was maintained, and people resorted there in large numbers for various purposes. The evidence fails to show that any intoxicating liquors were sold by any of the defendants upon the place.

The evidence shows that ample liquor was there; that defendants furnished their patrons with glasses, chipped ice, ginger ale, and soft drinks, charging $2.50 a quart for ginger ale, and $4 a quart for grape juice. The place was well patronized, and for months large crowds of people assembled practically every night, bringing intoxicating liquor with them, remaining at the tables, or dancing late into the night. The liquors were publicly displayed, and it is the testimony of witnesses that generally by midnight, or at least toward the early morning hours, virtually all of the crowd was drunk. It was necessary to carry out drunken men, while drunken women fell upon the floor. Men and women were drinking and tussling on the floor, and, while the evenings started in quietude and peace, they ended in Bacchanalian orgies, with all the concomitants, and, as described by some of the witnesses, the place became a "veritable madhouse."

In both cases the question was properly raised that the evidence was insufficient to show that a nuisance was being maintained on these premises as the same is defined in section 21 of the National Prohibition Act hereinbefore set out. This is the important and controlling question involved.

It is the theory of defendants that section 21 does not reach a situation such as is here presented; that Congress did not include within the definition of a nuisance a place where liquor was drunk or consumed; that the act covers only a place where liquor is manufactured, sold, bartered, or kept; and that the evidence in these cases shows that defendants did not manufacture, keep, barter, or sell intoxicating liquors, and that therefore the charge of maintaining a nuisance under the National Prohibition Act fails. In their brief defendants' counsel clearly state the proposition as follows: "It is therefore respectfully submitted that defendants cannot be convicted of the crime charged in either the contempt or the nuisance case, because they did not do the thing which the statute denounces. They kept the place, but the evidence shows that no liquor was manufactured, sold, kept, or bartered at that place."

[1] To constitute a nuisance under section 21, the place must be one "where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title." Section 21 of the act does not stand alone. It refers to liquors manufactured, sold, kept, or bartered "in violation of this title" (title 2). Section 3 of this title provides as follows:

"Sec. 10138½aa. No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." Possession of intoxicating liquor, except as authorized in the act is an offense against the United States.

It is conceded that there was no liquor manufactured on the premises or sold thereon by defendants. Two sales are shown, which were made on the premises to government inspectors by parties other than defendants. The Supreme Court of the United States in Street v. Lincoln Safe Deposit Co. et al., 254 U. S. 88, 92, 41 S. Ct. 31, 32 (65 L. Ed. 151, 10 A. L. R. 1548) has defined the word "kept" as used in section 21 as follows: "The word 'kept' in this section is the only one of possible application to the case at bar, and the words with which it is immediately associated are such that as here used it plainly means kept for sale or barter or other commercial purpose." This court in Feinberg v. United States (C. C. A.) 2 F.(2d) 955, 958, referring to the same section of the National Prohibition Act, says: "Under that section it is necessary that the keeping or possession of the liquor shall be for sale, barter, or other commercial purposes." In Singer v. United States (C. C. A.) 288 F. 695, 696, referring to this same section, the court said: "The words 'sold' and 'kept' in this section are the ones applicable to the case at bar. The word 'sold' tells its own meaning. The word 'kept,' read in connection with the words with which it is immediately associated, 'means kept for sale or barter or other commercial purpose.' "

[2] Defendants urgently insist that, because

the liquor was brought on the premises by guests, and kept on the premises by the guests for consumption, and not for sale or barter, defendants can be guilty of no crime—at least, the crime of common nuisance. Under the common nuisance section of the National Prohibition Act it is not necessary, in order to charge a defendant with maintaining a nuisance, that he personally manufacture, sell, keep, or barter liquor upon the premises. The act is directed against a place where intoxicating liquor is manufactured, sold, kept, or bartered. If a person maintain a place where intoxicating liquor to his knowledge is manufactured, sold, kept, or bartered, in violation of the General Act, he will be guilty of maintaining a common nuisance even though he did not personally possess, sell, keep, or manufacture the liquor. United States v. Gaffney et al. (C. C. A.) 10 F.(2d) 694; Wiggins v. United States (C. C. A.) 272 F. 41. Defendants are not on trial here for manufacturing and selling intoxicating liquor, but for maintaining a nuisance. Defendants' theory seems to be that defendants must personally, in order to be guilty under the common nuisance statute, have been engaged in manufacturing, keeping, selling, or bartering the liquor. The theory is unsound.

[3] If a party owning a place such as the Moonlight Ranch permits and encourages the selling and keeping of intoxicating liquor for purposes not permitted by the National Prohibition Act, he cannot well claim that, because he did not handle the liquor personally, he was not guilty of maintaining a nuisance. If liquors were kept on this Moonlight Ranch, or sold in violation of law, and the element of continuity existed in such keeping or sales, certainly the place was a nuisance. If defendants knowingly maintained the place as one where such liquors were sold, or kept, or bartered contrary to the provisions of the National Prohibition Act, they were engaged in maintaining a nuisance in violation of section 21.

An almost parallel case to the one before us is United States v. Budar et al., 9 F.(2d) 126, 128, where District Judge Geiger, discusses similar questions, and holds that a roadhouse, where intoxicating liquor was consumed by the patrons with owners' express consent and to their pecuniary profit, was a nuisance under section 21 of the National Prohibition Act; that the keeping as inhibited by the act did not require personal custodianship or dominion by the owners. The court there says: "If, under the law, such a place may be maintained so long as the proprietor or conductor thereof can insist that he did not personally possess, sell, or barter in the liquor which was always present, the law casts upon him no obligation except that he shall not know. Thereupon he may safely maintain the place, and with safety permit the liquor to be present, and possessed by some one, and of course may invite the liquor-possessing public to bring their liquor and to bargain with him for the privilege of having it in his place to be there consumed, and as shown in this case, sell them the accessories, and the accessory service needful for its consumption—all at prices which make his selling of the liquor inconsequential. Now, no one would deny that these circumstances disclose, clearly, culpable aiding and abetting in violation of the law respecting both transportation and possession—clear conspiracy—and in my judgment it is idle to say that the place is not a nuisance within the law."

[4] The definition of the word "kept" in the sections heretofore quoted, both by the Supreme Court of the United States and this court, is not limited to liquor kept for barter or sale, but includes also liquor kept for other commercial purposes. We think the language, "other commercial purposes," has been overlooked by defendants in their argument here. There was no difficulty, as the evidence shows, in obtaining liquor at the Moonlight Ranch. A suggestion to a waiter that parties desired to purchase liquor might bring forth the statement that they did not sell liquor, but in a few moments an accommodating vendor of intoxicating liquor appeared to satisfy the inquiry as to sale, and the sale was made. Mike Rossi invited people to come and bring their liquors. Telephone conversations in the presence of some of the defendants also resulted in bringing liquors to the place.

It is apparent under this evidence that parties who did not bring liquor knew full well there was no difficulty in obtaining liquor upon the place. The statements that liquor would not be sold on the place, the signs that it was prohibited, were mere subterfuge and camouflage. The place was maintained for the very purpose of having liquor provided, not merely for consumption, but for sale to parties who desired to consume. The very purpose of having the liquor there was commercial; it resulted in more dancing, more purchases of foods and soft drinks, more sales of the things naturally accompanying the liquor, and hence more profits to defendants. The situation is not presented of where a party goes to a roadhouse or public place, and brings liquor for his own consumption, unknown to and unassisted in securing the same by the proprietor. It is a situation

where parties were conducting such a place purely for commercial purposes. Guests were urged to come and invited to bring intoxicating liquor. They were told they could bring the liquor and consume it on the place. Defendants assisted them in carrying out their plans to unlawfully transport liquor to the place and unlawfully have it in their possession. Of course, liquors were there to be consumed; but it is perfectly apparent that parties were there ready to sell liquor to those who had not brought it with them, and these parties made certain sales, as the evidence shows.

To say that defendants, in this night after night of drunken revelry, did not know that intoxicating liquor was being unlawfully kept and sold upon the place, and were not assisting in the proceedings, is to close our eyes to the common sense deductions from the general affairs of life. It is not a case of intoxicating liquor being on the place merely once or twice, but scores of people assembled there night after night for months, and the sales made even under circumstances which are condemned by defendants, and which are possibly not to be commended, together with the general conduct of the place, are sufficient to show that defendants were maintaining a nuisance under section 21 of the National Prohibition Act. Defendant Mike Rossi seems to have been proprietor of the place. Caroline Rossi and Gene Rossi aided and abetted him in carrying it on, and are guilty as principals under section 332 of the Penal Code (Comp. St. § 10506). They co-operated in the general venture and were all engaged in maintaining the nuisance. Remus v. United States (C. C. A.) 291 F. 513.

Defendants claim that the sales shown in evidence were made at the instigation of government officials, by persons unknown to the defendants, and for whose acts and conduct they were not legally or morally responsible. They urge that the doctrine of entrapment applies. The court submitted this question to the jury in a very fair and complete instruction. The record shows that these defendants were persistent violators of the prohibitory law, and evidently the jury were satisfied that the government agents were attempting to detect crime, and not to provoke it. We are satisfied the evidence was sufficient to sustain the finding of the court in the contempt proceedings that defendants had violated the injunction, and to sustain the verdict of the jury finding them guilty of maintaining a common nuisance.

[5] The question so far discussed is the main and controlling question in these cases. We refer briefly to some of the other errors urged, one being the refusal of the court to designate another judge, under section 21 of the Judicial Code (Comp. St. § 988), to try the case. Defendants filed a petition under this section asking for the designation of another judge. The petition was based upon a statement of Judge Symes (who tried this case) in a previous trial of a case of Eugene Rossi, viz.: "It is evident that you have no intention of going right. That is shown by your association with the notorious Moonlight Ranch, which is a stench in the nostrils of honest people." It is claimed this expression of Judge Symes was not in the course of any trial or proceeding involving the Moonlight Ranch, and was expressed long prior to the filing of the informations upon which the prosecutions here are based. It is necessary that the affidavit filed under section 21 show that the judge before whom the action or proceeding is to be tried has a personal bias or prejudice against the party to be tried, and such affidavit must state the facts and reasons for the belief that such bias or prejudice exists. Saunders v. Piggly Wiggly Corporation (D. C.) 1 F.(2d) 582.

It is held in Berger et al. v. United States, 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481, that the judge may pass upon the sufficiency of the affidavit, but not upon the truth or falsity of the facts alleged. It is doubtful if the affidavit as to prejudice was sufficient, but whether it was or not is unimportant, because it appears that in all the cases the affidavit was not filed until the day of trial. The alleged statement of the judge was made months before, and was known to the parties in ample time to have filed the affidavit before the day of trial. This court has considered this statute in a number of cases quite recently, viz. Heber Nations v. United States of America (C. C. A.) 14 F.(2d) 507, where affidavit of prejudice was filed, but the question of time was not involved; the trial was postponed by the court on its own motion for more than 30 days after the filing of the affidavit; also Lewis v. United States (C. C. A.) 14 F.(2d) 111, where the question of filing the affidavit in proper time was not involved. This court held in Bishop v. United States, 16 F.(2d) 410 (opinion filed November 29, 1926) that where the parties had full information of the matters of alleged prejudice prior to the day of trial, and did not file their application before that day they had waived the matter. See, also, Chafin v. United States (C. C. A.) 5 F.(2d) 592. The statute provides that the affidavit as to bias or prejudice shall be filed not less than 10

days before the beginning of the term of court, or good cause shown for the failure so to do. No cause is shown here at all for the failure to file the affidavit until the day of trial.

We take up some alleged errors in the contempt case not common to the nuisance case. Assignment of error No. 12 of the contempt case is based on the claim that the District Court considered certain ex parte affidavits on the question of defendants' guilt. These were affidavits in the original abatement proceeding, and used in the hearing on application for temporary injunction. They were stipulated into the record in this case. It is urged by defendants that these affidavits could not be considered on the question of whether defendants had violated the injunction; that contempt for violation of an injunction can only be predicated upon matters that occurred since its issuance. Of course, that is true. The court, in passing thereon, said: "I think it is proper that the court should and it does consider the affidavits and the allegations of the bill of complaint and the answer of the defendants therein solely and only for the purpose of determining what conditions existed at the Moonlight Ranch previous to and up to the time that this court granted the temporary injunction dated August 15, 1925." It is apparent, therefore, that the court only considered these affidavits as bearing on conditions prior to the time the court granted the temporary injunction August 15, 1925. We see no reason for complaint as to this. There was ample evidence of violations subsequent to the day the injunction was issued. We have considered the other assignments of error in the contempt case and think there is no merit therein.

As to the nuisance case, error is assigned in receiving testimony as to the reputation of the Moonlight Ranch; but counsel does not press this alleged error, insisting, however, that the evidence of reputation should be limited to the thing denounced by the statute. Whether this is true or not, the evidence of bad reputation could have added little to the abundance of facts presented in evidence showing the general character of this place. Certainly there was no prejudice to defendants in showing the bad reputation of the place. The evidence already had abundantly established that fact.

Complaint is also made that the court unduly restricted examination of government witness Lukens. Defendants were entitled to a full cross-examination of this witness, especially in view of the fact that he, a government official, brought liquor upon the place.

However, the matter was within the sound discretion of the court, and there was no such abuse of that discretion as to warrant a reversal.

Other errors are referred to, but are not pressed. We have examined them, and are satisfied there is nothing of substance therein.

The judgment of the trial court should be sustained in all the cases as to all the defendants; and it is so ordered.

Affirmed.