**FRITZEL v. UNITED STATES. ROTHSTEIN v. SAME. TEARNEY et al. v. SAME.**

(Circuit Court of Appeals, Seventh Circuit. March 23, 1927.)

Nos. 3846–3848.

Intoxicating liquors ☞143—Restaurant, where patrons consume liquor brought with them, held place where liquor was "kept," and common nuisance (National Prohibition Act, tit. 2, §§ 3, 21, 22, 25, 33 [Comp. St. §§ 10138½aa, 10138½jj, 10138½k, 10138½m, 10138½t]).

A restaurant, where patrons consumed intoxicating liquor brought with them, *held* a place where liquors were "kept," within meaning of National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), and hence a common nuisance, subject to abatement proceedings under section 22, tit. 2 (Comp. St. § 10138½k), in view of sections 3, 25, and 33, tit. 2 (Comp. St. §§ 10138½aa, 10138½m, 10138½t).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Keep.]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suits by the United States against Mike Fritzel, against William R. Rothstein, and against Al Tearney and another, to enjoin and abate liquor nuisances. From the decree in each case, defendants separately appeal. Decree in each case affirmed.

Edwin L. Weisl, of Chicago, Ill., for appellants Fritzel and Rothstein.

Maclay Hoyne and Jno. L. McInerney, both of Chicago, Ill., for appellants Tearney and Tearney Town Club.

Edwin A. Olson, of Chicago, Ill., for the United States.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In each of the above cases the district attorney brought suit in the name of the United States under section 22 of title 2 of the National Prohibition Act (Comp. St. § 10138½k), to enjoin and abate a common nuisance, as defined in section 21 of title 2 of the act (Comp. St. § 10138½jj). Decrees were entered in favor of the government, and the principal defendant in each case has appealed. In the three cases the complaints are substantially alike, the evidence is to the same effect, and the assignments of error relied on are identical. The cases were heard together and will be disposed of in the same way. In 3846 the place complained of is known as the Friar's Inn; in 3847, as the Moulin Rouge; and in 3848, as Al Tearney's Town Club. The places are public restaurants or cafés.

In each case the complaint avers that the place is a room and place where intoxicating liquors are kept and possessed, in violation of title 2 of the National Prohibition Act. The affidavits filed with the complaints are by proper averments made a part of them, and thus considered they allege, in substance and effect, that the appellants maintained the places; that on repeated occasions persons came there as patrons of the places and produced, from bundles or their pockets, bottles and flasks containing intoxicating liquor; that waiters there supplied glasses and cracked ice and ginger ale, drew the corks, and assisted the patrons in their consumption of the liquors. In each case there is substantial evidence to support the averments of the complaints. In the Tearney Case the defendants offered no evidence, and in the other two cases the evidence of the defendants consisted of their testimony that they had not kept or sold liquor in their places, and the testimony of patrons that, at times not shown to be those covered by the government's evidence, they saw no liquor consumed there.

The assignments of error in 3846, questioning the ruling of the court in admitting evidence with regard to a previous raid on the

place, require no serious consideration here, because we may and do, as the trial court doubtless did, disregard it in coming to a conclusion upon the merits.

In each case the assignments of error relied upon assert that the District Court erred in entering the decree, "in that said decree is founded upon evidence * * * that persons patronizing the restaurant consumed or drank intoxicating liquor brought there by themselves, and not furnished, transported, kept, possessed, or sold by appellant," and again, "said District Court erred in entering said decree, in that under section 22, title 2, of the Volstead Act, a place where customers or third persons congregate and drink intoxicating liquor brought there by themselves is not a nuisance within the abatement provisions of the said Volstead Act."

In the briefs of appellants it is stated:

"The issues, in the main, depend upon the meaning of the word 'kept,' as used in section 21 and title 2 of the National Prohibition Act."

It is earnestly contended that if, with the knowledge and consent of appellants, persons patronizing their restaurants consumed or drank as a beverage intoxicating liquor brought there by themselves, and not furnished or sold by the proprietors, or if the restaurants were shown to be places where customers or third persons congregated and drank as a beverage intoxicating liquor brought there by themselves, such facts would not make the places common nuisances under section 21.

Section 21, tit. 2 (Comp. St. § 10138½jj) provides:

"Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance."

Attention is called to the fact that this section does not say any place where the proprietor thereof keeps liquor, but declares any *place* where liquor is kept in violation of the law—*no matter by whom kept*—to be a common nuisance. We may therefore put to one side the contention that the proprietors were not shown to have kept the liquors.

The question, then, comes to this: Were the intoxicating liquors, brought to the restaurants and there consumed as above stated, *kept* there in violation of the provisions of title 2?

Section 3 of this title (Comp. St. § 10138½aa) reads:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Section 25, tit. 2 (Comp. St. § 10138½m), provides:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property."

As applicable to the question in hand, this section 25 reads: It shall be unlawful to have or possess any liquor which has been used in violating this title.

The evidence shows, and it seems to be conceded, that the persons consuming the liquor brought it to the restaurants—that is, transported it there. Under this section it was, when there, liquor which had been used in violating the prohibition against transporting, as set forth in section 3, and by the very terms of section 25 above quoted it was unlawful to have and possess it. So long as they had and possessed it there, they kept it there in violation of the statute.

Section 33 of title 2 of the Act (Comp. St. § 10138½t) provides:

"After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this title."

The use of the word "kept" in this section is significant. The possession of liquor is, on the face of it, made proof that it is not only kept, but also kept for an unlawful purpose. A place where liquor is kept for any unlawful purpose denounced by the statute is a nuisance.

It may be suggested that the word "kept" involves the idea of time, duration, or continuance; that there is a difference between having or possessing, and keeping, liquor. The statute gives no warrant for such a distinction. Section 33, as we have seen, declares possession of liquor to be prima facie evidence that it is kept for an unlawful purpose. It declares that the bare, unexplained

possession of liquor, by any person not legally permitted to possess it, is proof that such liquor is kept and kept unlawfully. If it is possessed or kept in violation of title 2, it does not appear to be important how long or how short a time it is possessed or kept. The allegation in each complaint is that the nuisance complained of was a continuing nuisance. The proofs show that liquor was brought to these places by their patrons and there consumed, on repeated occasions, so often as to amount to a practice or custom. This would seem to be sufficient to uphold a finding that it was kept there, even if there be included in the definition of the word "kept" the element of duration or continuance.

It is urgently insisted that the Volstead Act nowhere prohibits the consumption of liquor; that it does not prohibit persons from congregating together at public places, such as these restaurants, and there consuming their own liquor. In view of the fact that, with certain exceptions not applicable here, mere possession is forbidden, it is well to remember that consumption is impossible without possession by the consumer. If an essential prerequisite of consumption—that without which consumption cannot be accomplished—is made unlawful, it certainly was not intended to encourage consumption. In view of section 3, tit. 2 (Comp. St. § 10138½aa), declaring that "all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented," the legislative intent to prevent the consumption of intoxicating liquor as a beverage seems clear. To consume it is to use it. To say that Congress meant what it says in the above-quoted sections of the statute, but did not intend to declare as a nuisance a public restaurant where persons were continually permitted to congregate and consume—use as a beverage—their own liquors, brought there unlawfully and there unlawfully possessed, is to give the provisions of the act a liberal construction to the end that its object may be defeated, not effected.

The decree in each case is affirmed.

ALSCHULER, Circuit Judge. I am at least in much doubt whether the foregoing conclusion is correct. Under the indicated facts, whether the premises were a common nuisance, as defined in section 21, tit. 2, National Prohibition Act (Comp. St. § 10138½jj), turns on the meaning of the word "kept" as there used. Ordinarily the word implies an element of continuity or repetition. The applicable dictionary meaning, as given in the Century, is: "8. To have habitually in stock or for sale."

The Supreme Court, in a case not similar in its facts, discussing its meaning in section 21, says:

"The word 'kept' in this section is the only one of possible application to the case at bar, and the words with which it is immediately associated are such that, as here used, *it plainly means kept for sale or barter, or other commercial purpose.*" (Italics mine.) Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548.

This definition has been followed in a number of subsequent C. C. A. opinions. Aroniss et al. v. U. S., 13 F.(2d) 620, 622; U. S. v. Ward, 6 F.(2d) 182, 184; Feinberg v. U. S., 2 F.(2d) 955, 958; Singer v. U. S., 288 F. 695; U. S. v. Touring Car, 274 F. 470, 473.

Section 22, tit. 2 (Comp. St. § 10138½k), which alone provides for the equity action and the year's closure of premises, prescribes that, on finding the allegations of the bill true, "the court shall order that no liquors shall be manufactured, sold, bartered, or *stored* in such room, * * *" and thus persuasively suggests an intended interchangeability of the word "kept," as in section 21, and "stored," as in 22, and again the word "kept," as subsequently employed in 22, in stating conditions of bond for reopening a place closed by order of court. If in 21 the word were "stored," instead of "kept," it would scarcely be contended that the cases would be covered by the section.

In two recently decided cases in the Eighth C. C. A., it is stated that the "commercial purpose," referred to in the Street Case, sufficiently appears to establish a common nuisance, as provided in section 21, where the one who maintains the premises, although himself having no possession or ownership of the liquor which customers bring there for their own consumption, encourages or permits the practice upon the premises, in order to increase his sale to such customers of foods, waters, and other commodities, in themselves innocent, which he keeps for sale. Notary et al. v. U. S., 16 F.(2d) 434; Rossi v. U. S., 16 F.(2d) 712.

I very much doubt whether this conclusion is warranted. It seems to me that the "commercial purpose" must inhere in the liquor itself; that is, that the intended use or disposition of it is commercial, such as a sale of it, or storage of it—something in connection with the liquor itself, which, in the cases before us, was brought there only on the per-

sons of the customers, for their own consumption while there.

Can the liquor be said to be "kept" on the premises for "commercial purpose" if, under the facts of the case and within the purview of section 21, it is not "kept" there at all? Surely the "commercial purpose" does not attach to the man who brings it there for his own consumption, and it would seem that, whatever may be the "commercial purpose" of the keeper of the place, neither he nor the place would be amenable to section 21, if the liquor is not "kept" there at all, within the proper definition of the word "kept."

The fact that a place where persons congregate for drinking their liquor, which they bring there on their persons, might indeed constitute the place an actual nuisance, not less in degree than those which the act specifically declares to be such, should in no manner affect the question. That such a nuisance might well have been, or even ought to have been, included in section 21, is beside the question. Possibly, as suggested in government briefs, the lawmakers did not anticipate such a "loophole," although it seems highly improbable that, with the many years of prior experience with prohibitory statutes and ordinances, it remained for the Eighteenth Amendment era to first develop the practice here under consideration. However, it is not for courts to supply inadvertent legislative omissions. But is it not also easily possible that the lawmakers deliberately withheld the "congregating" feature from the operation of the nuisance sections, and were not willing to subject to the risk of a year's closing every building in the land into which persons might bring and consume their own liquor, if only a judge concludes that this was with the consent or knowledge of the tenant or other person in charge, and that in such cases it would be safer to apply only those other plenary remedies and penalties which the National Prohibition Act prescribes for its infraction?

But in any event the drastic penalty of a year's closing by an order of court, without a jury, cannot safely be extended by implication, and ought not to be applied, unless clearly authorized by the law as it is. Statutory construction, strict or liberal, should not stretch statutes to cover cases not fairly within their terms.

The generally assumed nation-wide prevalence of the practices with which these cases deal induces the suggestion that definite and early settlement of the question involved, by the highest judicial authority of the land, would be of much public benefit.