## BRIGGS v. UNITED STATES.
### No. 5809.

Circuit Court of Appeals, Sixth Circuit.

Dec. 11, 1930.

Edward N. Barnard, of Detroit, Mich., for appellant.

David A. Wolff, of Detroit, Mich. (John R. Watkins, of Detroit, Mich., on the brief), for the United States.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

DENISON, Circuit Judge.

Briggs appeals from an order "padlocking" (title 27, § 34, USCA) his cafe-cabaret-night club in Detroit. Proofs were taken in open court, and a duly settled narrative statement of evidence is returned.

This is an equity proceeding. The recent Supreme Court rule (Equity Rule 70½, June 2, 1930 [28 USCA § 723]) requires that the trial judge make findings of fact and law. Lacking any exposition of that rule by the Supreme Court, we do not understand that it contemplates, in the ordinary equity case, all the proceedings and formalities which attend such findings in suits at law. Until it is otherwise authoritatively held, we shall think the rule satisfied by a clear and concise statement by the trial judge—whether called findings or opinion—which shows what he regards as the essential facts and the applicable rules of law. The present record lacks even this; but the rule is so recent, and the necessary findings are so

simple and so clearly implicit in the result reached, that we think it unnecessary to remand the record for completion in this respect.[1]

It is undisputed that intoxicating liquor was present in the café in considerable quantity, and continuously—in the sense of daily—over the period of several weeks while the place was under observation. During the evening and early morning hours of every day, 150 to 1,000 patrons were present, and whisky bottles were very commonly standing upon the tables and patrons were therefrom supplying whisky for their drinks. It is said that habitually nearly all the occupied tables were supplied with the "set-ups" used or useful for that purpose. It is assumed by defendant that this liquor so consumed was brought in each evening by the guests, in bottles and flasks. For the present, we accept this assumption. The accompanying fact is that Briggs furnished to these guests "set-ups," that is, glasses, ice, and ginger ale or charged water, for the purpose of being used, and which were used, in drinking the liquor; and for these Briggs was paid. It is fair to assume that at least many quarts of whisky and other liquors were brought upon and consumed upon these premises during the busy hours of every day; and this was with Briggs' full knowledge and approval.

■ To justify condemnation of the premises as a nuisance, the statute (27 USCA § 33) requires proof that liquor is sold, kept, or bartered thereon in violation of the act. "Kept," it is true, implies some continuity; but this "keeping" was for a part of every day for many days; that is continuous enough. To illustrate: If a proprietor brought a stock of liquor to his place every day at noon, and had it there on sale for two hours, and then took it away, no one would doubt the "keeping." Nor can we think that the "keeping" must necessarily be immediately and directly by the proprietor. Being in control of the premises, he permits their use habitually as a place for the possession and consumption of liquor in substantial quantity; indeed, by his customary methods he practically invites his guests to use the café as a place for each to keep his there-present stock of liquor, as long as it lasts. He cannot, merely because the liquor is not under his sole control, deny the character which thus attaches to the place. One who aids

and abets or induces is regarded by the federal Criminal Code (section 332 [18 USCA § 550]) as a principal.

From this use of the café as a place for the keeping and drinking of intoxicating liquor Briggs gets a revenue. He not only charges a dollar a bottle for his ginger ale and White Rock (13 cents in the stores), but he uses this opportunity for drinking, and his conveniences therefor, as a lure to bring in guests who will pay him directly for the food only. Just as in the case of the cabaret music discussed by Mr. Justice Holmes in Herbert v. Shanley, 242 U. S. 591, 37 S. Ct. 232, 61 L. Ed. 511, the price of the liquor-drinking facilities is included in the price of food, and therefore they are furnished for a profit.

■ Another statutory requisite is that the keeping shall be "in violation of this chapter." 27 USCA § 33. Once having concluded that the case discloses "keeping" by Briggs, there is no room for doubt as to "in violation of," for a guest who brings a bottle or a flask violates the act by his transportation, and further violates the act by his possession after arriving at the café.

Appellant relies mainly upon the opinion of the Supreme Court in Street v. Lincoln Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. We find nothing there which seems at all controlling. The liquor there involved had been lawfully manufactured and could have been lawfully possessed by the owner at his residence. The owner's possession in the safety deposit room, and such possession as the safety deposit company had for the owner, were held to be, under the peculiar circumstances, lawful and not unlawful possession. The case decides nothing more. We cannot think it was intended to hold that mere possession and storage of illicit liquor were not forbidden. True, the opinion states that the keeping, forbidden by the nuisance statute, must be "for sale or barter or other commercial purpose." This is a comment by way of argument, and the Supreme Court would be quite at liberty, in a subsequent case, to regard it as not binding; but, taken at its full force, it does not protect the defendant here. Briggs' purpose in permitting and promoting this keeping of liquor on the premises was plainly commercial. He did so because it added to the profits of his business, and his profits, his additional revenue, came, not from aiding and participating with his customers in doing a lawful thing, as was the case with the Safety Deposit Company, but

[1] It is called to our attention that this rule did not go into effect until after the record below was completed, and so was not applicable.

from promoting and participating in the customers' unlawful transportation and possession.

About the fundamental question involved there has been a difference of judicial opinion,[1] but we are satisfied that such a use of the premises as is here shown is in violation of the law. If, however, this were doubtful, the doubt would necessarily be resolved against the appellant by virtue of the provision of section 3 (section 12, tit. 27, USCA), which requires the courts to adopt that liberal construction of the act—of course always within permissible limits—which will tend to prevent the use of intoxicating liquor as a beverage. The elimination of the practices here involved would go far to accomplish this declared statutory object; continuation and approval of them would plainly encourage and promote that use which the statute aimed at preventing.

We do not find it necessary to consider the proofs tending to show that "good" beer was on one occasion, to the extent of several barrels, served by Briggs' waiters to 1,000 people, nor that one seemingly a bootlegger was found on the premises apparently with liquors for sale, nor yet such explanations as are offered. Upon the broader ground discussed, the order is affirmed.

---

[1] For the construction which would include the situation here involved: Notary v. U. S., 16 F.(2d) 434, 49 A. L. R. 1446 (8 C. C. A.); Rossi v. U. S., 16 F.(2d) 712 (8 C. C. A.); Fritzel v. U. S., 17 F. (2d) 965 (7 C. C. A.), Cert. denied, 275 U. S. 532, 48 S. Ct. 29, 72 L. Ed. 411; Butler v. U. S., 35 F.(2d) 76 (9 C. C. A.), Cert. denied, 281 U. S. 734, 50 S. Ct. 248, 74 L. Ed. 1149.

For the narrower construction: We find several District Court cases but in the C. C. A. only the dissent in Fritzel v. U. S.

Those cited by appellant: Singer v. U. S., 288 F. 695 (3 C. C. A.); Feinberg v. U. S., 2 F.(2d) 955 (8 C. C. A.); U. S. v. Ward, 6 F.(2d) 182 (3 C. C. A.); McLean v. U. S., 8 F.(2d) 738 (9 C. C. A.); Cuttera v. U. S., 31 F.(2d) 439 (5 C. C. A.), involve distinctly different fact situations.