## WHITMAN & BARNES, Inc., v. ALLIED PRODUCTS CORPORATION.

### No. 4743.

District Court, E. D. Michigan, S. D.
Oct. 18, 1937.

Clarence B. Zewadski, Whittemore, Hulbert & Belknap, and Allen R. Whittington, all of Detroit, Mich., and Harold G. Capron, of Chicago, Ill., for plaintiff.

Stuart C. Barnes, and Barnes, Kisselle, Laughlin & Raisch, all of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This suit involves claims 1 and 2 of the Thomas patent No. 1,179,476, issued April 18, 1916, on a punch retainer (see[1] for claims). The structure shown in Figs. 1–4 of this patent involves a locking member which engages in an annular groove in the shank of the tool. This groove forms a shoulder against which the locking member abuts. The locking member has a sliding key and dovetail engagement with a sort of crosshead which slides in a guide. This crosshead is impelled towards the shank of the tool by a spring. A cam lever, with an eccentric on its end, can be used either to pull the locking member away from the tool to release it when the lever is swung in one direction or when the lever is swung in the opposite direction, it can force the crosshead and the lock firmly into locking engagement with the tool. In another form of the tool, an annular V groove is used simply with a set screw having a conical end. By turning the set screw out, the tool may be inserted in place and then by screwing it in, the tool may be clamped in place. The tool charged to infringe is one manufactured under the Richard et al. reissue patent 18,401 of March 29, 1932. This Richard patent is described more in detail and discussed in the opinion filed today in the case of the Allied Products Corporation, plaintiff v. Whitman & Barnes, Inc., defendant (D.C.) 21 F.Supp. 186, where it was the subject of a suit brought by the defendant in this case against the plaintiff in the instant suit.

It is sufficient to say here that the tool charged to infringe, and made under the Richard et al. patent, is one in which the locking device is a spring-pressed ball, rolling in a passageway or aperture which meets the tool socket at an acute angle. The shank of the tool is provided with a notch which is shown in the Richard et al. patent in the form of an arcuate notch. The notch in the tools manufactured by the defendant is angular when its shape is considered lengthwise of the tool. The tool is pushed into the socket. This causes the ball to recede from the socket into the angular passageway. When the notch of the tool comes opposite the passageway, the ball drops into the notch and locks the tool in the socket. This device, as I have explained in my opinion in the companion case, has an automatic take-up action; that is, if, for any reason, the tool shifts farther into the socket by reason of wear or denting of the headplate of the socket, the ball automatically takes a new grip on the tool and firmly holds the tool in the socket so that it cannot be pulled out without breaking something. The tool may be readily released by inserting a wire or rod into an opening leading into the ball passageway so as to push the ball out of

---

[1] Thomas patent 1,179,476, April 18, 1916.

Claim 1. In a metal punching machine, the combination of a punching head provided with a transversely disposed seat for a punch, a casing borne by said head and provided with a punch-receiving opening, a punch in said opening abutting at its inner end against the seat of said punching head, and a punching lock borne by said casing and movable laterally to and from punch-engaging position, said punch and said lock being provided with complementary strain-sustaining surfaces disposed transversely to the longitudinal axis of the punch.

Claim 2. In a metal-punching machine, the combination of a punching head provided with a seat for a punch, a spring-impelled punch lock borne by said punching head, and means for withdrawing said lock against the tension of its impelling spring.

the notch and then pushing the ball up the passageway and out of the notch.

The structures shown in the two figures of the Thomas patent, which I have described, and the structure of defendant differ vitally. The structure of the Thomas patent can only clamp the punch in place by means of operating the cam lever or the set screw by hand. In defendant's tool retainer, the operation is entirely automatic. The tool is simply pushed into the socket, the ball drops into the notch of the tool, and automatically locks it in place. If wear occurs in the tool retainer of the Thomas patent in suit, the tool has to be tightened by manual operation. If wear occurs in defendant's tool retainer, the ball automatically locks the tool in a new position and tightly in place.

It is apparent that if the plaintiff is to succeed in this suit on claims 1 and 2 of the Thomas patent, they must be given a very broad interpretation.

The record may show that this court has not examined the prior art put into the record by the defendant.

I was convinced the first time I looked at this patent that claims 1 and 2 were void on what I saw on my grandfather's work bench, but defendant did not want to rely on that, and counsel were good enough to consent that I leave the bench while defendant put into this record the prior art. I have not looked at it. It will, I know, contain the things I saw in common use half a century ago. This Thomas patent is void, even if there had been no advancement in the art since 1880. I refer to the ordinary punch which is driven in with the hammer on the old anvil.

I also refer to the old brace and bit for boring a hole. There were two kinds; one the cheap one without any lock to hold the bit in the brace. The user simply put the bit in the brace and put his chest against the brace while boring the hole. When the hole had been bored, the brace was taken out and the bit was left in the hole to be pulled out by hand.

Then there was a better and a higher priced brace and bit. Those were so constructed that the bit could be locked in the brace. Some of those bits that I saw as a boy were of the kind that the mouth of the brace would open, the bit could be inserted and then by turning a threaded band on the brace, the mouth closed and firmly held the bit. Others of the expensive kind had a bit so notched and a brace equipped with a spring which automatically forced a lock into the notch when the bit was inserted in the brace. So locked, the bit could be pulled out of the hole, after the hole had been bored, by pulling on the brace. The lock could then be released and the bit recovered from the brace.

We did not have any occasion on the farm to use a punch, except with a hammer. If we had wanted to use that brace and bit in a machine instead of with our hands, there might have been invention in the machine, but not in the brace and bit. If we had put the punch in a machine, instead of using our hands, we would have wanted to have the punch locked so that the machine would not only punch the hole, but would also pull the punch out of the hole. If we had used the same old brace and bit lock for the punch, it would have served the purpose and would have involved no invention. It was not invention to take the locking device of the old brace and bit and put it into a machine, or to take the locking device of the brace and bit and put it into the punch arrangement.

These two old tools (the punch and the brace and bit) have always been close together in the machine shop. They have occupied the same tool box and hung on the same rack over the work bench.

They are so near together and so much alike that they are in the same art.

The decree will hold claims 1 and 2 of the Thomas patent in suit void, and dismiss the bill.

This opinion may stand as my findings of fact and conclusions of law, as required by Equity Rule 70½, 28 U.S.C.A. following section 723, in accordance with the practice sanctioned by the Court of Appeals in Briggs v. United States (C.C.A.6) 45 F. (2d) 479.